UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DARRYL BULLARD, | Case No. 16-12918 |
| Plaintiff, | Gershwin A. Drain |
| v. | United States District Judge |
| SUNDSTROM, | Stephanie Dawkins Davis |
| | United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**REPORT AND RECOMMENDATION
MOTION FOR SUMMARY JUDGMENT (Dkt. 13)**

**I.     PROCEDURAL HISTORY**

Plaintiff, a prisoner in the custody of the Michigan Department of Corrections, filed this *pro se* prisoner civil rights action on August 8, 2016 against defendant. (Dkt. 1). The Court granted plaintiff's application to proceed *in forma pauperis* on August 12, 2016. (Dkt. 2, 3). On December 6, 2016, defendant Sundstrom filed a motion for summary judgment. (Dkt. 13). This matter was referred to the undersigned by District Judge Gershwin Drain on the same day. (Dkt. 14). On January 6, 2017, plaintiff filed a response. (Dkt. 17). This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED**.

1

## II. PLAINTIFF'S COMPLAINT

Plaintiff brings his complaint against defendant in both his individual and official capacity, claiming that defendant targeted and retaliated against plaintiff based on plaintiff's exercise of his religion. Plaintiff is a member of the Nation of Islam. Plaintiff asserts claims under the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act (RLUIPA). Plaintiff seeks money damages and a declaration that defendant's actions were unconstitutional.

According to the complaint, on July 17, 2015, while plaintiff was leaving the site of the Eid observance (a feast/ceremony that takes place at the end of the holy month of Ramadan), he was abruptly stopped by defendant who asked where plaintiff was coming from. (Dkt. 1, Pg ID 3). Plaintiff claims he explained that he was returning from the Eid observance and further alleges that defendant replied, "take that stupid ass bow-tie off before I write you a fucking misconduct, you know I don't like Muslims especially you Nation of Islam guys." *Id*. Plaintiff also states that he told defendant that wearing a bow-tie was part of his exercise of his religious tenets and that it was even recognized as such in the MDOC's policy directive 05.03.150A. *Id*. According to plaintiff, defendant responded by yelling "I don't give a fuck about your religious beliefs take that stupid ass bow-tie off before I write you a misconduct and have you placed in segregation." *Id*. Plaintiff says that he removed the bow-tie out of fear, began walking toward his housing

unit door and he overheard defendant make a comment about "what some Muslims did allegedly in Chattanooga, Tennesee, which was murder (4) active duty marine corps soldiers." *Id*.

Plaintiff informed Sgt. Leslie about what happened that same day and filed a grievance. Plaintiff received a response to his grievance which he says verified that defendant's conduct was based on discrimination and retaliatory conduct for plaintiff exercising his religious beliefs. Plaintiff appealed the grievance through Step III. *Id*. at Pg ID 3-4. Plaintiff maintains that defendant's conduct violated his rights under First and Fourteenth Amendments in that he was denied his right to freely exercise his religion, he was retaliated against, and he was denied equal protection of the law. Plaintiff also asserts that defendant's conduct violates the RLUIPA.

### III. ANALYSIS AND CONCLUSION

A. <u>Standard of Review</u>

Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (E.D. Mich. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence

4

supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

      B.      <u>Exhaustion of Administrative Remedies - Retaliation Claim</u>

          1.    Legal standards

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218. "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[P]roper exhaustion of administrative remedies is

5

necessary." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Brown v. Toombs*, 139 F.3d 1102 (6th Cir.), *cert. denied*, 525 U.S. 833 (1998) (No federal action shall be brought until such administrative remedies as are available are exhausted). In other words, a prisoner may not exhaust administrative remedies during the pendency of the federal lawsuit. *Larkins v. Wilkinson*, 1998 WL 898870, at *2 (6th Cir. Dec. 7, 1998).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Id.* Accordingly, exhaustion is satisfied if plaintiff complied with the applicable grievance procedures and defendants bear the burden of showing otherwise. *See Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir. 2007) (a prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

2. MDOC Grievance Procedure

Pursuant to MDOC policy directive 03.02.130 entitled "Prisoner/Parolee Grievances," there are four stages to the grievance process that must be followed before a prisoner can seek judicial intervention, each with specific time limits. (Dkt. 13-2). First, the prisoner must attempt to verbally resolve the issue with the staff member(s) involved within two business days of becoming aware of a

grievable issue. If the issue is not resolved, the prisoner may file a Step I grievance within five business days of the attempted verbal resolution. If the prisoner is not satisfied with the Step I outcome, or he does not receive a timely response, he must request a Step II appeal form within five days, and he then has an additional five days to file the Step II appeal. If the inmate is still not satisfied with the result, he must then file a Step III appeal within 10 business days. The Step III response ends the administrative process. (Dkt. 13-2). When filing a grievance and/or grievance appeal, an inmate must state the facts involved with the issue being grieved, and must also include the "[d]ates, times, places, and names of all those involved in the issue being grieved." *Id*. A grievance may be rejected if it is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant. A grievance may also be rejected if the grievance is untimely. *Id.*

    3.    Analysis

The undersigned recognizes that plaintiff is not required to allege in his grievance a specific legal theory or facts that correspond to all the required elements of a legal theory. Rather, "it is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh*, 450 F.3d 651, 651

(6th Cir. 2006) (finding that this relaxed standard is consistent with the general practice of liberally construing *pro se* prisoners' filings).  However, even under this relaxed standard, the undersigned concludes that plaintiff did not exhaust a retaliation claim.

In his complaint, plaintiff alleges that Sundstrom threatened him with misconduct tickets and also made threats to have him placed in segregation.  However, plaintiff did not mention these allegations in any step of the grievance process.  As to alleged threats, plaintiff only mentions that Sundstrom told him to "take that stupid ass bow-tie off," "why did I have that stupid ass shit on anyway," "take that stupid ass shit off," that he became visibly upset and furious, began to use profanity and belittle his religion.  (Dkt. 13-3, Pg ID 85).  Plaintiff also wrote in his Step I grievance that he heard Sundstrom make a comment about Chattanooga, Tennessee.  *Id*.  At Step II, plaintiff further explained his belief that Sundstrom's mention of Chattanooga, Tennessee was clearly a threat because he must have been referring to an incident occurring the day before where a Muslim allegedly attacked a U.S. Marine Corps recruiting station and murdered four active duty marines.  (Dkt. 21-2, Pg ID 151).  Again, plaintiff does not mention any alleged threats of misconduct tickets or being placed in segregation.  At Step III, plaintiff again mentions Sundstrom verbally desecrating and belittling his religion, but does not mention any specific threats of misconduct tickets or segregation.

(Dkt. 13-3, Pg ID 83). While a grievance is not a summons and complaint, a review of the grievance, the appeals, and the responses do not suggest that prison officials were put on notice of any threats by Sundstrom of writing misconduct tickets or placing plaintiff in segregation. *See Moffat v. MDOC*, 2010 WL 3906115, *7 (E.D. Mich. 2010) (citing *Jones v. Bock*, 549 U.S. 199 (2007), citing *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2006) ('We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.")). Rather, the leading purposes of the exhaustion requirement are met where prison officials were alerted to the plaintiff's complaints, they addressed all of plaintiff's allegations on their merits, and the litigation was improved by the preparation of useful record. *Id*. Here, plaintiff's grievance does not fulfill these purposes as to any conduct that would support a retaliation claim. *See e.g.*, *Ayotte v. Stemen*, 2016 WL 5027594, at *4 (E.D. Mich. Sept. 20, 2016) (The plaintiff's grievance did not put the defendants on notice of the claims brought against them.). Thus, the undersigned concludes that plaintiff's one grievance fails to exhaust his retaliation claim.

  C. <u>Eleventh Amendment Immunity</u>

Defendant asserts that he is entitled to immunity under the Eleventh

Amendment for plaintiff's claims against him in his official capacity. In response, plaintiff asserts that defendant is not entitled to such immunity. The state or one of the state's departments enjoy immunity under the Eleventh Amendment from suits for money damages in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *Kitchen v. Leach*, 2017 WL 1905871, at *8 (W.D. Mich. May 10, 2017) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993)). Eleventh Amendment immunity extends to damages claims against state officials sued in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). As explained in *Kitchen v. Leach*, Congress has not expressly abrogated Eleventh Amendment immunity by statute with respect to § 1983, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986); *see also McCrary v. Ohio Dep't of Human Servs.*, 2000 WL 1140750, at *3 (6th Cir. Aug. 8, 2000) (finding § 1983 and § 1985 claims against state agency and its employees in their official capacities for damages barred by Eleventh Amendment immunity). Thus, plaintiff cannot bring a § 1983 suit for money damages against defendant in his official capacity.

D. Qualified Immunity

1. Legal standard

The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Defendants bear the burden of pleading qualified immunity, but plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his or her position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (citation omitted) (explaining that "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity").

The Supreme Court has established a two-part test in order to determine whether qualified immunity is applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first part of the test involves a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id*. If the first question was resolved in the affirmative, then the court would decide "whether the

right was clearly established." *Id*. If both questions are resolved in the affirmative, then the doctrine of qualified immunity does not apply and the case can proceed.

The Supreme Court subsequently revisited its decision in *Saucier* and concluded that the mandatory sequencing of the two-part test for determining if qualified immunity applied was no longer sound based on several factors, including judicial economy. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009). While not modifying the factors that should be considered in such a decision, the Court held that sometimes it makes sense to decide the second part of the test first, and that such a decision may resolve the controversy without having to address the first part of the test. *Id.* In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful search conducted by the defendant police officers. Without having to engage in the perhaps more complicated inquiry of whether plaintiff's constitutional rights had been violated, the Court found that the constitutional right claimed by plaintiff was not clearly established. Specifically, the Court concluded that lower court case law was consistent with the conduct of the officers and "principles of qualified immunity [should] shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Id.* at 244-45. "This generally means that 'we are free to consider those questions in whatever order is appropriate in light of the issues before us.'" *Jones*

v. *Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (quoting *Moldowan v. City of Warren*, 570 F.3d 698, 720 (6th Cir. 2009)).

Under the "clearly established" prong of the qualified immunity test, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "A clearly established constitutional violation requires on-point, controlling authority or a robust consensus of cases of persuasive authority." *Ortega v. U.S. Immigration and Customs Enforcement*, 737 F.3d 435, 439 (6th Cir. 2013). Without on-point authority, only in the most obvious of cases can an official's conduct be held to have been clearly unlawful. *Sample v. Bailey*, 409 F.3d 689, 698-99 (6th Cir. 2005).

  2. Analysis

Here, plaintiff offers no case law in support of his claim that defendant's conduct violates his constitutional rights. He is unable to satisfy the "clearly established" prong. Therefore, his claims fail. As explained in *Mizori v. Miller*, 2009 WL 777640, at *2 (E.D. Mich. 2009), it is well-established, however, that allegations of verbal harassment and threats are insufficient to state a civil rights claim under § 1983. *Id*. (citing *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987); *Davis v. Michigan Dept. of Corrections*, 746 F.Supp. 662, 667 (E.D. Mich. 1990); *Welch v. Chapman*, 2008 WL 544618, *5 (E.D. Mich. 2008) (adopting

magistrate judge's report concluding that assistant deputy warden's alleged remark that he hates Farrakhan and his supporters did not support a free-standing constitutional claim or a claim that the defendant deliberately discriminated against prisoner's religion). Even verbal threats by a corrections officer to assault an inmate do not violate an inmate's Eighth Amendment rights. *See Miller v. Wertanen*, 109 Fed. Appx. 64, 65 (6th Cir. 2004). Indeed, "[m]ere insults are generally not actionable under 42 U.S.C. § 1983." *Siggers v. Renner*, 37 Fed. Appx. 138, 141 (6th Cir. 2002); *Wingo v. Tennessee Dept. of Corr.*, 499 Fed. Appx. 453, 455 ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a § 1983 claim for relief."); *Carney v. Craven*, 40 Fed. Appx. 48, 50 (6th Cir. 2002) ("An inmate has no right to be free from verbal abuse, and minor threats do not rise to the level of a constitutional violation" (internal citations omitted)). Regardless of the theory, First Amendment or RLUIPA, claims made on this basis are without merit. *Stepter v. Warden, Hocking Corr. Facility*, 2013 WL 4456043, at *3 (S.D. Ohio Aug. 16, 2013) (Purported verbal harassment was insufficient to state a claim under the First Amendment or RLUIPA). Plaintiff's Equal Protection claim likewise fails on this basis. *Jones v. Porter*, 2000 WL 572059, at *2 (6th Cir. May 1, 2000) ("Jones's Fourteenth Amendment equal protection claim is without merit, as a prison official's verbal harassment or idle threats do not rise to a

constitutional level.")

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d). The response must specifically address each issue raised in the

objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 14, 2017                    s/Stephanie Dawkins Davis
                                                    Stephanie Dawkins Davis
                                                    United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on August 14, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: Darryl Bullard, #341908, Kinross Correctional Facility, 4533 W. Industrial Park Drive, Kincheloe, MI 49786.

                                                      s/Tammy Hallwood
                                                      Case Manager
                                                      (810) 341-7887
                                                      tammy_hallwood@mied.uscourts.gov